MR. JUSTICE WEBER
delivered the opinion of the Court.
The defendants are K & S Partnership and the named members of the partnership. Collectively they are referred to as K & S. K & S *177 appeals from the findings, conclusions and order of the Thirteenth Judicial District Court of Yellowstone County enjoining K & S from using the building here involved for any purpose other than as a single-family dwelling. Howard Porter, in his own behalf and in behalf of other owners of property in the Grandview Subdivision of Billings, is the plaintiff and is herein referred to as Porter. Following a hearing on Porter’s motion for preliminary injunction, and after briefs were submitted by both parties, the District Court held that the operation of the property as an apartment triplex by K & S violates certain restrictive covenants to which the property is subject, and that Porter is not barred from enforcing the restrictive covenants by the doctrines of laches, estoppel, waiver or acquiescence. Furthermore, the court held that enforcement of the restrictive covenants will not unconstitutionally deny equal protection of the laws to K & S or the K & S tenants under the Fourteenth Amendment to the U.S. Constitution. The preliminary injunction allows K & S the opportunity to show cause at a later date why the injunction should not be made permanent.
The preliminary injunction has been stayed pending this appeal.
The issues as discussed by K & S are as follows:
1. Did the District Court err by concluding that any action to enforce the restrictive covenants is not barred by doctrines of laches, estoppel, waiver or acquiescence?
2. Did the District Court err in concluding that enforcement of the restrictive covenants will not deny equal protection of the law to K & S or its tenants?
3. Did the District Court err in granting to Porter the preliminary injunction?
4. Did the District Court err in refusing to admit certain evidence?
We hold that the District Court erred in granting the preliminary injunction. This answers the third issue and disposes of this appeal. We do not consider issues number one and two because they are not properly before this Court on the merits. A discussion of the defenses on the part of K & S would be premature pending final *178 determination at the trial court level. We do discuss the evidence questions of issue number four.
Porter and the others whom he represents are property owners in and residents of Grandview Subdivision in Billings. The original owner of the platted lots in that subdivision, in 1931, executed and recorded a “Declaration of Restrictions Affecting Grandview Subdivision at Billings, Montana”. In 1980 K & S purchased an older house in the subdivision for the admitted purpose of operating the house as an apartment triplex. The purchasers are alumni of Kappa Sigma fraternity, and rent primarily to members of that fraternity at Eastern Montana College. Porter and the homeowners he represents seek an injunction and damages based upon their claim that such use violates the restrictions placed on most subdivision property in 1931.
The Declaration of Restrictions is comprehensive and is expressly made “for the use and benefit of the present owners and for its future grantees”. The restrictions cover such things as number and kind of buildings which can be constructed, minimum costs of residences, width of front and side yards, fence heights, and window and porch projections. The following portions of such Declaration of Restrictions are pertinent:
“PERSONS BOUND BY THESE RESTRICTIONS
“All persons . . . who now own or shall hereafter acquire any interest in any of the lots in Grandview Subdivision . . . shall be taken and held to agree and covenant with the owner of the lots shown on said plat and with his heirs and assigns to conform to and observe the following covenants, restrictions and stipulations as to the use thereof . . .
“USE OF LAND
“Section 1. None of said lots may be improved, used or occupied for other than private residence purposes and no flat or apartment house, though intended for residence purpose, may be erected thereon. Any residence erected or maintained thereon shall be designed for occupancy by a single family.
“Section 9. DEFINITIONS
*179 “Family — One or more persons living, sleeping and usually cooking and eating on the premises, as a single housekeeping unit.
“Section 12. RIGHT TO ENFORCE
“. . . [T]he owner or owners of any of the above land shall have the right to sue for and obtain an injunction, prohibitive or mandatory, to prevent the breach of, or to enforce the observations of the restrictions above set forth, in addition to ordinary legal action for damages, and the failure of . . . the owner ... of any . . . lot. . . to enforce the restrictions herein set forth, at the time of its violation, shall in no event be deemed to be a waiver of the right to do so thereafter ...”
Porter filed a verified complaint and application for preliminary injunction on March 14, 1980. K & S filed its answer on April 7, 1980. The answer denies any violation of the restrictive covenants, and interposes defenses sounding in equal protection, waiver and acquiescence, laches and estoppel. Hearing on the application for preliminary injunction was held on April 15, 1980.
The evidence shows that a Mrs. Froney, the previous owner, who sold the house to K & S, had rented out rooms or apartments continuously over a period of 40 years. About 1940 Mrs. Froney began renting her basement to five or six female students at the request of Eastern Montana College. In 1952 Mrs. Froney remodeled her attic and rented it out as an apartment with a separate entrance. Mrs. Froney continued renting out both the basement and attic to different persons and family units until 1980, when she sold the house to K & S, having advertised and represented it as a triplex unit. Porter admits knowing of Mrs. Froney’s practice of renting out rooms. In substance, Porter stated they allowed this because they knew her, knew she lived on the premises, and knew that she would run a quiet place. Also Porter and the others believed that she badly needed the money. K & S testified that the purchase of the house was made believing it to be a legal triplex. Brad Pemberton, who acted for K & S, stated that he had no knowledge of the restrictive covenants prior to purchase and would not have bought the unit if he had known of them.
*180 Other testimony at the hearing indicates that several other restrictions have not been enforced for many years. A fraternity member living in the triplex stated that he had counted numerous fences which were in violation of fence height restrictions. General allegations of apartments in other houses were also made. K & S attempted to introduce a petition signed by other residents of the subdivision which states that those residents have no objection to the triplex, but the petition was excluded by the trial court as not relevant. Finally, K & S submitted evidence to prove that, due to development in the surrounding area over the years, the character of the subdivision has changed so greatly that enforcement of the restrictions now would be inequitable.
The District Court specifically found that the use of the house by K & S as a triplex is a violation of the restrictions; that K & S had notice of the restrictions at the time it purchased the house; that the previous use of the house by Mrs. Froney was materially different from the present use, and that Porter is not barred by estoppel, laches or waiver from enforcing the restrictions. In addition, the District Court found that enforcement of the restrictions against K & S is not a denial of equal protection; and, that evidence of change and development in the subdivision and in surrounding areas offered by K & S to show change in the character of the subdivision such that enforcement of the restrictive covenants now would be inequitable, was not relevant to the action.
At the outset, we note that this appeal does not involve a judgment rendered after trial on the merits. It involves a preliminary injunction granted after a hearing, with such injunction to remain in effect only until the determination on the merits after the final hearing. Preliminary injunctions are governed by Title 27, Ch. 19, Parts 2, 3 and 4. Specifically, section 27-19-201, MCA, provides when preliminary injunctions may be granted:
“ When preliminary injunction may be granted. An injunction order may be granted in the following cases:
“(1) when it shall appear that the applicant is entitled to the relief demanded and such relief or any part thereof consists in *181 restraining the commission or continuance of the act complained of, either for a limited period or perpetually;
“(2) when it shall appear that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant . . .” (Emphasis added.)
The preliminary injunction statutes have been construed and applied by this Court many times. The statutes were amended by the 1979 Montana legislature, but the changes are procedural in nature. The statutes now require a hearing on the application in all cases, whereas prior to 1979 a preliminary injunction could have been granted on the pleadings alone under certain circumstances. See Ch. 399, Laws of Montana (1979).
The allowance of a preliminary injunction is vested in the sound legal discretion of the District Court, with the exercise of which the Supreme Court will not interfere except in instances of manifest abuse. Atkinson v. Roosevelt County (1923), 66 Mont. 411, 421, 214 P. 74, 76-77; Parsons v. Mussigbrod (1921), 59 Mont. 336, 340, 196 P. 528, 529. An applicant for a preliminary injunction must establish a prima facie case, or show that it is at least doubtful whether or not he will suffer irreparable injury before his rights can be fully litigated. If either showing is made, then courts are inclined to issue the preliminary injunction to preserve the status quo pending trial. Rea Bros. Sheep Co. v. Rudi (1912), 46 Mont. 149, 160, 127 P. 85, 87.
“Status quo” has been defined as follows:
‘. . . the last actual peaceable, noncontested condition which preceded the pending controversy. . . ” ” State v. Sutton (1946), 2 Wash.2d 523, 98 P.2d 680, 684; State v. Oldham (1978), 283 Or. 511, 584 P.2d 741, 743. See also 40 Words and Phrases, “Status Quo”.
The last peaceable, noncontested condition here consisted of Mrs. Froney’s practice of renting out the second story apartment and basement apartment as well as living on the main floor herself. The established status quo then, would be that of a three-family unit, as defined by the restrictions. The order of the District Court *182 has the effect of altering the status quo by requiring that the usage be limited to occupancy by a single family. The effect of this injunction is to substantially reduce the rental from the dwelling because it could no longer be rented as a three-family unit.
The District Court did not find that Porter might suffer injury if the preliminary injunction did not issue. The District Court apparently proceeded under section 27-19-201(1), MCA, which provides for the granting of a preliminary injunction when it appears that the applicant is entitled to the relief demanded and such relief consists in restraining the commission of an act. Although no finding of injury or damage is required for a preliminary injunction under that paragraph, it is the court’s duty to minimize the injury or damage to all parties to the controversy. As stated in Atkinson, 66 Mont. 423, 214 P. 77:
“. . . the limit of the endeavor of this court upon this appeal will be to so protect the rights of all parties to this suit, that, whatever may be the ultimate decision of these issues, the injury to each may he reduced to the minimum.” (Emphasis added.)
The potential loss of rental income by K & S is a significant factor to be considered.
In rebuttal of Porter’s prima facie showing that the restrictive covenants are being violated, K & S submitted evidence tending to show the following: (a) long-standing acquiescence by the neighborhood in violations of the restrictive covenants by Mrs. Froney, the prior owner and renter of the three-family unit, (b) violations of other restrictive covenants throughout the subdivision, (c) present usage by K & S that is substantially similar to that of Mrs. Froney, in that both rented the property as a three-family unit. We find such evidence does rebut the prima facie showing made by Porter that the restrictions are being violated.
Having concluded that Porter’s prima facie case was rebutted, that the status quo would not be preserved, and that the injury to all would not be minimized, we hold that issuance of the preliminary injunction was a manifest abuse of discretion. The in *183 junction is dissolved, and the case remanded to the District Court for trial on the merits.
We point out that we express no opinion as to the ultimate merits of the action. “It is not the province of the district court, nor of [the Supreme Court], to determine finally matters that may arise upon a trial on the merits.” Atkinson, 66 Mont. 425, 214 P. 78; Blinn v. Hutterische Soc. of Wolf Creek (1920), 58 Mont. 542, 554-555, 194 P. 140, 143. In granting temporary relief by injunction, courts of equity should in no manner anticipate the ultimate determination of the questions of right involved. Rather, the court should decide merely whether a sufficient case has been made out to warrant the preservation of the property or rights in status quo until trial, without expressing a final opinion as to such rights. An applicant need not make out such a case as would entitle him to final judgment on the merits. Atkinson, 66 Mont. 422, 424, 214 P. 77, 78; Rea Bros. Sheep Co., 46 Mont. 160, 127 P. 87. By the same token, an applicant who could show that he is entitled to final judgment on the merits still might not be entitled to a preliminary injunction. As stated in the above-cited cases, the limited function of a preliminary injunction is to preserve the status quo and to minimize the harm to all parties pending full trial. If a preliminary injunction will not accomplish those purposes then it should not issue. Finding and conclusions directed toward the resolution of the ultimate issues are properly reserved for final trial on the merits.
Appellants raise appropriate questions of evidence. In finding of fact no. 18, the District Court found that evidence as to changes in the character of the subdivision caused by developments in neighboring land was not relevant to the question whether the restrictions on the triplex are being violated. The authorities agree, however, that where the restricted area has changed so radically over the years such that the purpose and intent of the restrictions are totally defeated, then equity cannot enforce the restrictions. The change must be so radical and permanent as to neutralize the benefits of the restrictions. 7 Thompson on Real Property Ch. 48, § *184 3174 (pages 211-216); 5 Powell on Real Property Ch. 60, § 684; 20 Am.Jur.2d Covenants, Conditions and Restrictions, §§ 281, 282.
At the trial on the merits, the District Court should consider the effect on the subdivision of changes inside and outside the specific restricted area. Widespread renting of apartments as alleged, congested streets and increased traffic, and development of nearby institutions like St. Vincent’s Hospital and Eastern Montana College, all could have the effect of defeating the purposes of the restrictions. The above-cited authorities do state, however, that greater weight should be given to changes inside the boundary of the restricted area than to changes in neighboring areas.
The District Court granted Porter’s motion in limine to exclude a petition offered by K & S, and signed by other residents of the subdivision, stating that the residents have no objection to operation of the triplex. The District Court excluded the petition as not relevant. Appellant claims error, and asks that this Court declare the petition admissible.
“Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable . . .” Rule 401, Mont.R.Evid. This standard allows wide admissibility. Commission Comment to Rule 401; Rule 402. The petition appears admissible on the question whether the character of the neighborhood has changed so radically as to render enforcement of the restrictions inequitable, and should be considered at trial on the merits.
We remand the case to the District Court for trial consistent with this opinion to determine if a permanent injunction should be granted.
MR. CHIEF JUSTICE HASWELL and JUSTICES DALY, HARRISON, MORRISON and SHEA concur.