No. 03-022

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 41

VALLEY CHRISTIAN SCHOOL, CLINT MOREY,
individually and as parent of JOSHUA C. MOREY,
a minor child; COLBURN T. DAVIS, individually
and as parent of NICOLE DAVIS, a minor child; JULIE
A. VON ESCHEN, individually and as parent of
DANIELLE VON ESCHEN, a minor child; RODNEY
K. HAYNES, individually and as parent of RACHEL
D. HAYNES, a minor child; and TRACI D. FISTER,

        Plaintiffs and Appellants,

    v.

MONTANA HIGH SCHOOL ASSOCIATION,
a non-profit corporation,

        Defendant and Respondent.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and For the County of Missoula, Cause No. DV-01-813,
                Honorable Ed McLean, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                John E. Smith, David C. Avery, and Matthew Thiel (argued), Smith
                and Thiel Law Offices, Missoula, Montana

        For Respondent:

                Jock O. Anderson (argued), Gough, Shanahan, Johnson & Waterman,
                Helena, Montana

                          Heard and Submitted: July 15, 2003

                                    Decided: February 24, 2004

Filed:

                        _____
                                  Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 The appellants here are comprised of the Valley Christian School in Missoula , certain high-school students who attend VCS and their parents (collectively referred to as VCS). VCS sought a preliminary injunction preventing the Montana High School Association (MHSA) from enforcing its rule that schools must be accredited to be members. The District Court denied VCS's motion for a preliminary injunction and subsequent motion to reconsider. VCS now appeals that decision. We affirm.

## FACTS

¶2 VCS is a privately run, religious school, providing an education to students in grades Kindergarten through twelve. VCS is limited in the pool of teachers it may hire by its own criteria. VCS's most important standard is that teachers personally recognize Jesus Christ as their personal Lord and Savior. VCS's policy requires teachers to integrate the Bible and the teaching of Christ into their daily subject matter. VCS hired Doug Dierking (Dierking) to teach science. Dierking was not certified to teach by the Office of Public Instruction (referred to as OPI or the State). Finding that he lacked moral fitness for the profession due to a previous conviction for cruelty to animals, the State declared Dierking was uncertifiable. Nonetheless, given Dierking's otherwise excellent credentials and experience teaching at the college level and his philosophical fit with the school, VCS determined Dierking had been "called by God" and hired him.

¶3 In order for a school to be accredited by the State, its teachers must be certified. The State does not require private schools to be accredited, but it will accredit private schools which apply and meet the criteria. MHSA is a private, voluntary association of public and

2

private schools in Montana. MHSA promulgates rules and standards for interscholastic activities. Two MHSA bylaws are of import here. First, MHSA membership is conditioned on state accreditation. Second, an MHSA member school may compete on a one-on-one basis with a non-MHSA member school, but any tournament or activity involving more than two schools shall be comprised only of MHSA members. Thus, when VCS hired Dierking, it not only lost the state accreditation it had maintained for fifteen years, but it also lost its MHSA membership and the ability to compete in certain interscholastic competitions.

¶4     VCS petitioned for a preliminary injunction preventing MHSA from enforcing its membership bylaws against VCS, contending that the bylaws impermissibly burdened its free exercise of religion.

## DISCUSSION

¶5     In reviewing an order granting or denying a preliminary injunction we determine whether the district court committed a manifest abuse of its discretion. *Shammel v. Canyon Resources Corp.*, 2003 MT 372, ¶ 12, 319 Mont.132, ¶ 12, 82 P.3d 912, ¶ 12. A manifest abuse of discretion is one that is obvious, evident or unmistakable. *Shammel,* ¶ 12. However, where the district court denies injunctive relief based on conclusions of law, no discretion is involved, and we review the conclusions of the law to determine whether they are correct. *Hagener v. Wallace*, 2002 MT 109, ¶ 12, 309 Mont. 473, ¶ 12, 47 P.3d 847, ¶ 12.

¶6     VCS claims that it has established a prima facie case sufficient to meet any one of the three disjunctive criteria of the preliminary injunction statute. Section 27-19-201, MCA.

3

VCS contends MHSA's bylaws excessively burden its religious freedom; its fundamental right to determine the upbringing of their children; and its freedom of association. VCS claims infringement of multiple rights creates a hybrid free exercise claim, and that hybrid claims merit strict scrutiny analysis as stated in *Employment Division, Dep't. of Human Resources v. Smith* (1990), 494 U.S. 872, 881, 110 S.Ct. 1595, 1601, 108 L.Ed.2d 876, 887.

¶7    VCS alleges that its free exercise of religion is being infringed in violation of the United States and Montana Constitutions. U.S. Const. amend. I.; Art. II, Sec. 5, Mont. Const. A facially neutral regulation impermissibly infringes on the constitutional requirement of government neutrality if it unduly burdens the free exercise of religion. *Wisconsin v. Yoder* (1972), 406 U.S. 205, 220, 92 S.Ct. 1526, 1536, 32 L.Ed.2d 15, 28. The United States Supreme Court has established the following test for determining whether there is a burden on the free exercise of religion:

> Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists.

*Thomas v. Review Bd. of Indiana Employment Sec. Division* (1981), 450 U.S. 707, 717-18, 101 S.Ct. 1425, 1432, 67 L.Ed.2d 624, 634. For purposes of this appeal, MHSA concedes that, although it is a private association, it meets the criteria of a "state actor."

¶8    The first part of the *Thompson* analysis is to determine whether an important benefit is at issue. We have previously recognized the important interest high school students have in extracurricular activities. In *Bartmess*, we applied a middle tier analysis to determine the

4

rights of a public school student to participate in his school's extracurricular activities. *St. ex rel. Bartmess v. Sch. Dist. No. 1* (1986), 223 Mont. 269, 275, 726 P.2d 801, 804. In *Kaptein*, we recognized a student in a private school had a constitutionally-recognized interest in participating in a public school's extracurricular activities, but we upheld as reasonable the public school's policy of only providing those activities to its students. *Kaptein v. Conrad Sch. Dist.* (1997), 281 Mont. 152, 931 P.2d 1311. In light of our decisions recognizing the rights of high school students to participate in extracurricular activities, membership and participation in the MHSA is an important benefit.

¶9     Thus, our analysis of VCS's claimed burden focuses on "conduct proscribed by a religious faith" and conduct "mandated by religious belief." *Thomas,* 450 U.S. at 718, 101 S.Ct. at 1432, 67 L.Ed.2d at 634. VCS's claim is premised on a false dilemma of its own creation. It claims that MHSA's accreditation bylaw requires it to choose between: (1) hiring Dierking and continuing to provide a Christian education; and (2) participating in MHSA. While the MHSA membership rule very well may put substantial pressure on a private school to hire only certified teachers, this does not violate any religious belief. Nothing before this Court indicates that VCS's internal standard of hiring teachers of faith precludes it from hiring certified teachers. OPI does not refuse certification to those candidates who are religious. OPI simply refuses to grant certification to candidates with low moral character as evidenced by their criminal record. The record establishes that VCS is able to hire certified or certifiable teachers whose religious beliefs are compatible with VCS. For fifteen years, prior to hiring Dierking, VCS hired certified teachers who presumably met its religious

requirements, and for that same fifteen-year period it qualified for state accreditation and membership in the MHSA. The situation presented does not satisfy the *Thomas* definition of a "burden" on religion. As is evidenced by VCS's fifteen years of compliance, the requirement that teachers be certified is not "proscribed by religious faith." Furthermore, the hiring of noncertified teachers (such as Dierking) is not "mandated by religious belief."

¶10    Our decision here is easily distinguishable from *Wisconsin v. Yoder,* upon which VCS relies. In *Yoder,* the United States Supreme Court struck down a Wisconsin statute which burdened the Amish by requiring that all children attend school until the age of sixteen. A central concept to the Amish faith is a fundamental belief that salvation requires life in a church community separate and apart from the world and worldly influence. *Yoder*, 406 U.S. at 210, 92 S.Ct. at 1530, 32 L.Ed.2d at 22. The Amish religion emphasizes a harmony with nature and the soil, a life of goodness, community welfare, and physical labor. Thus, the Amish allowed their children to attend public school only until the eighth grade, but refused high school because it would impermissibly expose their children to the worldly influence of science, competitiveness and socialization. *Yoder*, 406 U.S. at 211, 92 S.Ct. at 1531, 32 L.Ed.2d at 22. The United States Supreme Court noted that the Amish showing of a burden upon their religion was one that probably few other religious groups or sects could make. *Yoder,* 406 U.S. at 235-36, 92 S.Ct. at 1543, 32 L.Ed.2d at 37. Thus, a facially neutral law, applied in a non-discriminatory fashion, and enacted for the general welfare of the citizenry had to yield to the practices of the Amish, because it was incompatible with their religion.

6

¶11 In contrast to the situation in *Yoder*, VCS has not shown that its religious beliefs are incompatible with teacher certification. Rather than attempting to preserve a unique religious culture and a right to live apart from the predations and vices of modern society, VCS seeks to fully integrate itself, and allow VCS students to exemplify their Christian ideals in competition with the students of other schools. VCS strives to be of the world, but not bound to its rules.

¶12 The United States Supreme Court has held that the free exercise clause does not imply that incidental effects of government programs which may make it more difficult to practice certain religions, but which have no tendency to coerce individuals into acting contrary to their religious beliefs, require government to bring forward a compelling justification for its otherwise lawful actions. "The crucial word in the constitutional text is 'prohibit': 'For the Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can exact from the government.'" *Lyng v. Northwest Indian Cemetery Protective Ass'n.* (1988), 485 U.S. 439, 450-51, 108 S.Ct. 1319, 1326, 99 L.Ed.2d 534, 548 (quoting *Sherbert v. Verner* (1963), 374 U.S. 398, 412, 83 S.Ct. 1790, 1798, 10 L.Ed.2d 965, 975 (Douglas, J., concurring)).

¶13 Even if one assumes arguendo that the MHSA bylaw requiring accreditation of member schools limits VCS's pool of potential teacher candidates and thereby makes it more difficult for VCS to offer a Christian education, the bylaw does not have a tendency to coerce individuals into acting contrary to their religious beliefs. We find no constitutional

basis for VCS's contention that MHSA should have to yield to VCS's wish to employ a teacher who, although devoted to VCS's religious principles, is not certified by OPI.

¶14 Finally, we note that VCS's "hybrid claim" argument is premised on an assumption that the MHSA bylaws infringe on the free exercise of religion *and* the exercise of another constitutionally protected right, such as freedom of association. Here, VCS has failed to clear the first hurdle. It has not shown any burden upon the free exercise of religion. Thus, we need not address the hybrid claim.

¶15 The order of the District Court denying the preliminary injunction is affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JIM REGNIER
/S/ JOHN WARNER
/S/ JIM RICE

Justice James C. Nelson dissents.

¶16    I dissent from the majority's failure to consider Valley Christian's hybrid free exercise claim and the majority's consequent failure to reverse the District Court's denial of a preliminary injunction.

¶17    Section 27-19-201, MCA, specifies when an order for an injunction may be granted:

> (1) *when it appears that the applicant is entitled to the relief demanded* and the relief or any part of the relief consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually;
> (2) *when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant*;
> (3) *when it appears during the litigation that the adverse party is doing or threatens or is about to do or is procuring or suffering to be done some act in violation of the applicant's rights, respecting the subject of the action, and tending to render the judgment ineffectual*;
> (4) when it appears that the adverse party, during the pendency of the action, threatens or is about to remove or to dispose of the adverse party's property with intent to defraud the applicant, an injunction order may be granted to restrain the removal or disposition;
> (5) when it appears that the applicant has applied for an order under the provisions of 40-4-121 or an order of protection under Title 40, chapter 15. [Emphasis added.]

We have previously stated that the subsections of this statute are disjunctive, consequently, findings that satisfy one subsection are sufficient for an injunction to issue. *Sweet Grass Farms v. Board of County Com'rs*, 2000 MT 147, ¶ 27, 300 Mont. 66, ¶ 27, 2 P.3d 825, ¶ 27 (citing *Stark v. Borner* (1987), 226 Mont. 356, 359, 735 P.2d 314, 317).

¶18    In conducting a hearing on a motion for a preliminary injunction, it is not the province of a district court to determine matters that may arise during a trial on the merits. *Knudson v. McDunn* (1995), 271 Mont. 61, 65, 894 P.2d 295, 298 (citing *Porter v. K & S Partnership*

9

(1981), 192 Mont. 175, 183, 627 P.2d 836, 840). Rather, the court should balance the equities and minimize the damage that could befall the moving party if the status quo is not preserved pending the resolution of the underlying action. *Porter*, 192 Mont. at 182, 627 P.2d at 840. The relevant inquiry then is whether the moving party has made out a *prima facie* case under any of the disjunctive subsections contained in § 27-19-201, MCA, or shown "that it is at least doubtful whether or not he will suffer irreparable injury before his rights can be fully litigated." *Sweet Grass*, ¶ 28.

¶19 In my opinion, Valley Christian did indeed make out a *prima facie* case under each of the first three subsections of § 27-19-201, MCA,--more than sufficient for a preliminary injunction to issue. By ignoring the relevant inquiry under § 27-19-201, MCA, and by instead prematurely reaching the ultimate issues raised in Valley Christian's complaint, the District Court committed reversible error.

¶20 In reaching its decision, the District Court relied on *Windsor Park Baptist Church, Inc. v. Arkansas Activities Ass'n* (8th Cir. 1981), 658 F.2d 618, wherein the Eighth Circuit Court of Appeals determined that the rule conditioning participation in interscholastic activities on state accreditation was a "reasonable regulation" of education and that no violation of the Free Exercise Clause had been made out. The District Court erred in applying the "reasonable regulation" standard in the instant case as *Windsor Park* was decided almost ten years before the United States Supreme Court's articulation of the hybrid claims doctrine in *Employment Division v. Smith* (1990), 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876.

¶21 MHSA's membership bylaw is a neutral law of general applicability. It is neither intended to exclude religious schools from membership in MHSA, nor is it intended to exclude any particular religious constituency from membership in MHSA. While it is constitutionally permissible for a neutral law of general applicability to incidentally infringe upon religious freedom so long as the law has a rational basis, a neutral law of general applicability must withstand strict scrutiny if the law burdens religious freedom in conjunction with another fundamental right. *Smith*, 494 U.S. at 880-82, 110 S.Ct. at 1601-02.

¶22 The majority cites *Thomas v. Review Bd. of Indiana Employment Sec. Div.* (1981), 450 U.S. 707, 717-18, 101 S.Ct. 1425, 1432, 67 L.Ed.2d 624, wherein the United States Supreme Court held that

> [w]here the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial.

Contrary to the majority's conclusion that no burden on religion exists in the case *sub judice*, I would conclude that by forcing Valley Christian parents to choose between their children's attendance at Valley Christian and their children's meaningful participation in extracurricular activities, the MHSA membership bylaw does burden religious freedom. Similarly, by forcing Valley Christian to choose between belonging to MHSA and hiring a teacher who can implement the school's Christian educational mission, the bylaw again burdens religious freedom.

11

¶23 Along with this burden on the free exercise of religion, Valley Christian has asserted another constitutional right.

> When some other constitutional right is combined with a free exercise claim in a so-called "hybrid claim," the state must demonstrate more than merely a reasonable relation to a valid, secular state purpose to sustain the validity of the regulation over First Amendment concerns. Where either parental interests or free speech are asserted in conjunction with a free exercise claim, something more than a mere "reasonable relation to some purpose within the competency of the State is required to sustain the validity of the State's requirement under the First Amendment."

*Alabama & Coushatta Tribes v. Trustees of Big Sandy Indep. Sch. Dist.* (E.D. Tex. 1993), 817 F.Supp. 1319, 1332 (citing *Wisconsin v. Yoder* (1972), 406 U.S. 205, 233, 92 S.Ct. 1526, 1542, 32 L.Ed.2d 15; *Smith*, 494 U.S. at 881, 110 S.Ct. at 1601). Valley Christian has advanced just such a "hybrid" claim in that MHSA's membership bylaw burdens Valley Christian parents' free exercise of religion in conjunction with the right of Valley Christian parents to direct the upbringing of their children.

¶24 The right to direct the upbringing of one's children is a fundamental right that is grounded in the Due Process Clause. As the United States Supreme Court has explained:

> The Due Process Clause guarantees more than fair process, and the "liberty" it protects includes more than the absence of physical restraint . . . . The Clause also provides heightened protection against government interference with certain fundamental rights and liberty interests . . . . In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the "liberty" specially protected by the Due Process Clause includes the right[ ] . . . to direct the education and upbringing of one's children . . . .

*Washington v. Glucksberg* (1997), 521 U.S. 702, 720, 117 S.Ct. 2258, 2267, 138 L.Ed.2d 772 (citing *Meyer v. Nebraska* (1923), 262 U.S 390, 43 S.Ct. 625, 67 L.Ed. 1042; *Pierce v.*

12

*Society of Sisters* (1925), 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070). Thus, the Supreme Court's recognition of the right to direct the education and upbringing of one's children as a liberty specially protected by the Due Process Clause reflects that Court's conclusion that such a right is "'deeply rooted in this Nation's history and tradition,' . . . and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if [it] were sacrificed. . . .'" *Hicks v. Halifax County Bd. of Educ.* (E.D. N.C. 1999), 93 F.Supp.2d 649, 658 (quoting *Glucksberg*, 521 U.S. at 721, 117 S.Ct. at 2268).

> Indeed, as the Supreme Court explained in 1944, "[i]t is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder."

*Hicks*, 93 F.Supp. at 658 (quoting *Prince v. Massachusetts* (1944), 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645).

¶25     The *Hicks* court further concluded that the conjunction of the two constitutional interests of free exercise and the parental right to direct the religious upbringing of one's children, in and of itself, merited heightened scrutiny.

> In other words, where a parent's free exercise right may not be sufficient to justify an exemption from a neutral, generally applicable law, that right, when combined with the constitutional right of the individual, as a parent, to direct her child's upbringing may be sufficient. Whether or not the second constitutional interest is independently viable is not at issue. It is the mere presence of the interest, as a genuine claim, supported by evidence in the record, that triggers the heightened scrutiny of the free exercise claim.

*Hicks*, 93 F.Supp. at 662.

13

¶26 In analyzing this doctrine, the Supreme Court of Indiana noted that while the United States Supreme Court has not again addressed the hybrid claim issue since *Smith* (other than a brief observation by Justice Kennedy), the issue has

> received considerable attention in other federal and state courts. Although arguably not uniformly construed and applied, the hybrid claim exception has been acknowledged in all the federal circuits. State courts addressing the issue have also acknowledged the legitimacy of hybrid claims.

*City Chapel Evangelical Free Inc. v. City of South Bend* (Ind. 2001), 744 N.E.2d 443, 452-53 and n.11, 12 (collecting cases).

¶27 While other courts may have adopted more stringent predicates for a hybrid rights claim, the Ninth Circuit Court of Appeals determined that

> [a]lthough the [United States Supreme] Court "has been somewhat less than precise with regard to the nature of hybrid rights," we recently held that, to assert a hybrid-rights claim, "a free exercise plaintiff must make out a 'colorable claim' that a companion right has been violated–that is, a 'fair probability' or a 'likelihood,' but not a certitude, of success on the merits."

*Miller v. Reed* (9th Cir. 1999), 176 F.3d 1202, 1207 (quoting *Thomas v. Anchorage Equal Rights Comm'n* (9th Cir. 1999), 165 F.3d 692, 703, 707). I would conclude that Valley Christian has presented a colorable claim in this case.

¶28 Under § 27-19-201(1), MCA, a preliminary injunction may be granted "when it appears that the applicant is entitled to the relief demanded." Here, Valley Christian appears entitled to relief because, contrary to the District Court's determination that a "reasonable regulation" standard is all that is necessary when analyzing the bylaw, the bylaw infringes on Valley Christian parents' free exercise of religion in conjunction with the right of Valley

Christian parents to direct the upbringing of their children, thus requiring a strict scrutiny analysis.

¶29 Strict scrutiny requires that the membership bylaw be invalidated unless it is justified by a compelling state interest and employs the least restrictive means of furthering that interest. *See, e.g., Armstrong v. State*, 1999 MT 261, ¶ 34, 296 Mont. 361, ¶ 34, 989 P.2d 364, ¶ 34. Moreover, strict scrutiny places the burden on MHSA to demonstrate the constitutionality of the bylaw. *Armstrong*, ¶ 41. This burden will be difficult for MHSA to overcome as not even the Board of Education has the authority to require accreditation or teacher certification of private schools. Indeed, Montana law does not impose any requirements that private schools be publicly or privately accredited or that their teachers be publicly or privately certified. MHSA has imposed requirements upon Valley Christian that the Board of Education has no power to impose. In effect, the District Court has granted MHSA authority that the Legislature has not seen fit to grant to either the Board of Education or MHSA. If there were a compelling state interest in requiring private schools to be accredited by the State and to employ only State certified teachers, that interest would presumably be reflected in the law. Ultimately, MHSA's membership bylaw is simply a convenient mechanism that allows MHSA to assume that its member schools have all met the same level of educational quality.

¶30 In addition to requiring a compelling state interest, strict scrutiny requires that a state actor use the least restrictive means to accomplish its objective. Here, MHSA's director conceded that it would not burden MHSA to accept an alternative form of accreditation.

15

Thus, even if the bylaw was justified by a compelling state interest, and even if the bylaw was effective in furthering that interest--neither of which has been demonstrated--the bylaw does not further the purportedly compelling interest in the least restrictive manner. *See Alabama*, 817 F. Supp. at 1330.

¶31    Furthermore, the bylaw is meaningless in the context of MHSA's operations. MHSA has no authority, legal or otherwise, to assure the educational quality of their member schools--that is the job of the Montana Board of Education and the Office of Public Instruction. There is no evidence in the record that Valley Christian students are not as well, if not better, educated than the students of the public school members of MHSA, the non-certified teacher notwithstanding. Moreover, there is no state requirement that private schools such as Valley Christian be accredited. MHSA is thus, in its capacity as a state actor, imposing upon Valley Christian a requirement that even the State does not impose--accreditation. Furthermore, MHSA's enforcement of this accreditation requirement frustrates Valley Christian parents in the religious upbringing of their children and in their choice of educational institutions in a way that the State of Montana itself does not. The parents have two choices, hire a certified teacher or forego a non-certified teacher that instructs within the tenets of their religious views. The fact that they could hire a teacher that met both criteria for 15 years does not affect the analysis. Until they were no longer eligible to join MHSA, Valley Christian did not have a justiciable controversy.

¶32 Because there is a substantial likelihood of success on the merits of Valley Christian's hybrid free exercise claim, Valley Christian is entitled to a preliminary injunction under § 27-19-201(1), MCA.

¶33 Furthermore, under § 27-19-201(2), MCA, Valley Christian needed only to present a *prima facie* case that enforcement of the bylaw pending litigation would cause them irreparable harm. Valley Christian presented ample evidence that enforcement of the bylaw would cause Valley Christian students to lose valuable opportunities to enhance their collegiate opportunities. Even if such enhanced collegiate opportunities are never a certainty, participation in formal interscholastic competition is itself a type of important experience that most high school students never repeat after graduation. Such lost opportunities cannot be restored, thus the harm is irreparable.

¶34 Finally, under § 27-19-201(3), MCA, Valley Christian needed only to present a *prima facie* case that enforcement of the bylaw pending litigation would infringe upon the rights at issue in a manner that cannot be effectively remedied by a favorable resolution of the case. The Ninth Circuit Court of Appeals has asserted that the infringement of a First Amendment freedom, even for a minimal period of time, cannot be effectively restored. *Foti v. City of Menlo Park* (9th Cir. 1998), 146 F.3d 629, 643.

¶35 Consequently, I would reverse and remand to the District Court with instructions to issue injunctive relief pursuant to § 27-19-201, MCA, and I dissent from our failure to do so.

/S/ JAMES C. NELSON

17