JUSTICE NELSON
dissents.
¶16 I dissent from the majority’s failure to consider Valley Christian’s *87 hybrid free exercise claim and the majority’s consequent failure to reverse the District Court’s denial of a preliminary injunction.
¶17 Section 27-19-201, MCA, specifies when an order for an injunction may be granted:
(1) when it appears that the applicant is entitled to the relief demanded and the relief or any part of the relief consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually;
(2) when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant',
(3) when it appears during the litigation that the adverse party is doing or threatens or is about to do or is procuring or suffering to be done some act in violation of the applicant’s rights, respecting the subject of the action, and tending to render the judgment ineffectual',
(4) when it appears that the adverse party, during the pendency of the action, threatens or is about to remove or to dispose of the adverse party’s property with intent to defraud the applicant, an injunction order may be granted to restrain the removal or disposition;
(5) when it appears that the applicant has applied for an order under the provisions of 40-4-121 or an order of protection under Title 40, chapter 15. [Emphasis added.]
We have previously stated that the subsections of this statute are disjunctive, consequently, findings that satisfy one subsection are sufficient for an injunction to issue. Sweet Grass Farms v. Board of County Com’rs, 2000 MT 147, ¶ 27, 300 Mont. 66, ¶ 27, 2 P.3d 825, ¶ 27 (citing Stark v. Borner (1987), 226 Mont. 356, 359, 735 P.2d 314, 317).
¶18 In conducting a hearing on a motion for a preliminary injunction, it is not the province of a district court to determine matters that may arise during a trial on the merits. Knudson v. McDunn (1995), 271 Mont. 61, 65, 894 P.2d 295, 298 (citing Porter v. K & S Partnership (1981), 192 Mont. 175, 183, 627 P.2d 836, 840). Rather, the court should balance the equities and minimize the damage that could befall the moving party if the status quo is not preserved pending the resolution of the underlying action. Porter, 192 Mont. at 182, 627 P.2d at 840. The relevant inquiry then is whether the moving party has made out a prima facie case under any of the disjunctive subsections contained in § 27-19-201, MCA, or shown “that it is at least doubtful *88 whether or not he will suffer irreparable injury before his rights can be fully litigated.” Sweet Grass, ¶ 28.
¶ 19 In my opinion, V alley Christian did indeed make out a prima facie case under each of the first three subsections of § 27-19-201, MCA,-more than sufficient for a preliminary injunction to issue. By ignoring the relevant inquiry under § 27-19-201, MCA, and by instead prematurely reaching the ultimate issues raised in Valley Christian’s complaint, the District Court committed reversible error.
¶20 In reaching its decision, the District Court relied on Windsor Park Baptist Church, Inc. v. Arkansas Activities Ass’n (8th Cir. 1981), 658 F.2d 618, wherein the Eighth Circuit Court of Appeals determined that the rule conditioning participation in interscholastic activities on state accreditation was a “reasonable regulation” of education and that no violation of the Free Exercise Clause had been made out. The District Court erred in applying the “reasonable regulation” standard in the instant case as Windsor Park was decided almost ten years before the United States Supreme Court’s articulation of the hybrid claims doctrine in Employment Division v. Smith (1990), 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876.
¶21 MHSA’s membership bylaw is a neutral law of general applicability. It is neither intended to exclude religious schools from membership in MHSA, nor is it intended to exclude any particular religious constituency from membership in MHSA. While it is constitutionally permissible for a neutral law of general applicability to incidentally infringe upon religious freedom so long as the law has a rational basis, a neutral law of general applicability must withstand strict scrutiny if the law burdens religious freedom in conjunction with another fundamental right. Smith, 494 U.S. at 880-82, 110 S.Ct. at 1601-02.
¶22 The majority cites Thomas v. Review Bd. of Indiana Employment Sec. Div. (1981), 450 U.S. 707, 717-18, 101 S.Ct. 1425, 1432, 67 L.Ed.2d 624, wherein the United States Supreme Court held that
[w]here the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial.
Contrary to the majority’s conclusion that no burden on religion exists in the case sub judice, I would conclude that by forcing Valley *89 Christian parents to choose between their children’s attendance at Valley Christian and their children’s meaningful participation in extracurricular activities, the MHSA membership bylaw does burden religious freedom. Similarly, by forcing Valley Christian to choose between belonging to MHSA and hiring a teacher who can implement the school’s Christian educational mission, the bylaw again burdens religious freedom.
¶23 Along with this burden on the free exercise of religion, Valley Christian has asserted another constitutional right.
When some other constitutional right is combined with a free exercise claim in a so-called “hybrid claim,” the state must demonstrate more than merely a reasonable relation to a valid, secular state purpose to sustain the validity of the regulation over First Amendment concerns. Where either parental interests or free speech are asserted in conjunction with a free exercise claim, something more than a mere “reasonable relation to some purpose within the competency of the State is required to sustain the validity of the State’s requirement under the First Amendment.”
Alabama & Coushatta Tribes v. Trustees of Big Sandy Indep. Sch. Dist. (E.D. Tex. 1993), 817 F.Supp. 1319, 1332 (citing Wisconsin v. Yoder (1972), 406 U.S. 205, 233, 92 S.Ct. 1526, 1542, 32 L.Ed.2d 15; Smith, 494 U.S. at 881, 110 S.Ct. at 1601). Valley Christian has advanced just such a “hybrid” claim in that MHSA’s membership bylaw burdens Valley Christian parents’ free exercise of religion in conjunction with the right of Valley Christian parents to direct the upbringing of their children.
¶24 The right to direct the upbringing of one’s children is a fundamental right that is grounded in the Due Process Clause. As the United States Supreme Court has explained:
The Due Process Clause guarantees more than fair process, and the “liberty” it protects includes more than the absence of physical restraint .... The Clause also provides heightened protection against government interference with certain fundamental rights and liberty interests .... In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the “liberty” specially protected by the Due Process Clause includes the right[ ]... to direct the education and upbringing of one’s children ....
Washington v. Glucksberg (1997), 521 U.S. 702, 720, 117 S.Ct. 2258, 2267, 138 L.Ed.2d 772 (citing Meyer v. Nebraska (1923), 262 U.S 390, 43 S.Ct. 625, 67 L.Ed. 1042; Pierce v. Society of Sisters (1925), 268 U.S. *90 510, 45 S.Ct. 571, 69 L.Ed. 1070). Thus, the Supreme Court’s recognition of the right to direct the education and upbringing of one’s children as a liberty specially protected by the Due Process Clause reflects that Court’s conclusion that such a right is “ ‘deeply rooted in this Nation’s history and tradition,’... and ‘implicit in the concept of ordered liberty,’ such that ‘neither liberty nor justice would exist if [it] were sacrificed. ...’ ” Hicks v. Halifax County Bd. of Educ. (E.D. N.C. 1999), 93 F.Supp.2d 649, 658 (quoting Glucksberg, 521 U.S. at 721, 117 S.Ct. at 2268).
Indeed, as the Supreme Court explained in 1944, “[i]t is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.”
Hicks, 93 F.Supp. at 658 (quoting Prince v. Massachusetts (1944), 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645).
¶25 The Hicks court further concluded that the conjunction of the two constitutional interests of free exercise and the parental right to direct the religious upbringing of one’s children, in and of itself, merited heightened scrutiny.
In other words, where a parent’s free exercise right may not be sufficient to justify an exemption from a neutral, generally applicable law, that right, when combined with the constitutional right of the individual, as a parent, to direct her child’s upbringing may be sufficient. Whether or not the second constitutional interest is independently viable is not at issue. It is the mere presence of the interest, as a genuine claim, supported by evidence in the record, that triggers the heightened scrutiny of the free exercise claim.
Hicks, 93 F.Supp. at 662.
¶26 In analyzing this doctrine, the Supreme Court of Indiana noted that while the United States Supreme Court has not again addressed the hybrid claim issue since Smith (other than a brief observation by Justice Kennedy), the issue has
received considerable attention in other federal and state courts. Although arguably not uniformly construed and applied, the hybrid claim exception has been acknowledged in all the federal circuits. State courts addressing the issue have also acknowledged the legitimacy of hybrid claims.
City Chapel Evangelical Free Inc. v. City of South Bend (Ind. 2001), 744 N.E.2d 443, 452-53 and n.11, 12 (collecting cases).
*91 ¶27 While other courts may have adopted more stringent predicates for a hybrid rights claim, the Ninth Circuit Court of Appeals determined that
[although the [United States Supreme] Court “has been somewhat less than precise with regard to the nature of hybrid rights,” we recently held that, to assert a hybrid-rights claim, “a free exercise plaintiff must make out a ‘colorable claim’ that a companion right has been violated-that is, a ‘fair probability’ or a ‘likelihood,’ but not a certitude, of success on the merits.”
Miller v. Reed (9th Cir. 1999), 176 F.3d 1202, 1207 (quoting Thomas v. Anchorage Equal Rights Comm’n (9th Cir. 1999), 165 F.3d 692, 703, 707). I would conclude that Valley Christian has presented a colorable claim in this case.
¶28 Under § 27-19-201(1), MCA, a preliminary injunction may be granted “when it appears that the applicant is entitled to the relief demanded.” Here, Valley Christian appears entitled to relief because, contrary to the District Court’s determination that a “reasonable regulation” standard is all that is necessary when analyzing the bylaw, the bylaw infringes on Valley Christian parents’ free exercise of religion in conjunction with the right of Valley Christian parents to direct the upbringing of their children, thus requiring a strict scrutiny analysis.
¶29 Strict scrutiny requires that the membership bylaw be invalidated unless it is justified by a compelling state interest and employs the least restrictive means of furthering that interest. See, e.g., Armstrong v. State, 1999 MT 261, ¶ 34, 296 Mont. 361, ¶ 34, 989 P.2d 364, ¶ 34. Moreover, strict scrutiny places the burden on MHSA to demonstrate the constitutionality of the bylaw. Armstrong, ¶ 41. This burden will be difficult for MHSA to overcome as not even the Board of Education has the authority to require accreditation or teacher certification of private schools. Indeed, Montana law does not impose any requirements that private schools be publicly or privately accredited or that their teachers be publicly or privately certified. MHSA has imposed requirements upon Valley Christian that the Board of Education has no power to impose. In effect, the District Court has granted MHSA authority that the Legislature has not seen fit to grant to either the Board of Education or MHSA. If there were a compelling state interest in requiring private schools to be accredited by the State and to employ only State certified teachers, that interest would presumably be reflected in the law. Ultimately, MHSA’s membership bylaw is simply a convenient mechanism that allows MHSA to assume *92 that its member schools have all met the same level of educational quality.
¶30 In addition to requiring a compelling state interest, strict scrutiny requires that a state actor use the least restrictive means to accomplish its objective. Here, MHSA’s director conceded that it would not burden MHSA to accept an alternative form of accreditation. Thus, even if the bylaw was justified by a compelling state interest, and even if the bylaw was effective in furthering that interest-neither of which has been demonstrated-the bylaw does not further the purportedly compelling interest in the least restrictive manner. See Alabama, 817 F. Supp. at 1330.
¶31 Furthermore, the bylaw is meaningless in the context of MHSA’s operations. MHSA has no authority, legal or otherwise, to assure the educational quality of their member schools-that is the job of the Montana Board of Education and the Office of Public Instruction. There is no evidence in the record that Valley Christian students are not as well, if not better, educated than the students of the public school members of MHSA, the non-certified teacher notwithstanding. Moreover, there is no state requirement that private schools such as Valley Christian be accredited. MHSA is thus, in its capacity as a state actor, imposing upon Valley Christian a requirement that even the State does not impose-accreditation. Furthermore, MHSA’s enforcement of this accreditation requirement frustrates Valley Christian parents in the religious upbringing of their children and in their choice of educational institutions in a way that the State of Montana itself does not. The parents have two choices, hire a certified teacher or forego a non-certified teacher that instructs within the tenets of their religious views. The fact that they could hire a teacher that met both criteria for 15 years does not affect the analysis. Until they were no longer eligible to join MHSA, Valley Christian did not have a justiciable controversy.
¶32 Because there is a substantial likelihood of success on the merits of Valley Christian’s hybrid free exercise claim, Valley Christian is entitled to a preliminary injunction under § 27-19-201(1), MCA.
¶33 Furthermore, under § 27-19-201(2), MCA, Valley Christian needed only to present a prima facie case that enforcement of the bylaw pending litigation would cause them irreparable harm. Valley Christian presented ample evidence that enforcement of the bylaw would cause Valley Christian students to lose valuable opportunities to enhance their collegiate opportunities. Even if such enhanced collegiate opportunities are never a certainty, participation in formal *93 interscholastic competition is itself a type of important experience that most high school students never repeat after graduation. Such lost opportunities cannot be restored, thus the harm is irreparable.
¶34 Finally, under § 27-19-201(3), MCA, Valley Christian needed only to present a prima facie case that enforcement of the bylaw pending litigation would infringe upon the rights at issue in a manner that cannot be effectively remedied by a favorable resolution of the case. The Ninth Circuit Court of Appeals has asserted that the infringement of a First Amendment freedom, even for a minimal period of time, cannot be effectively restored. Foti v. City of Menlo Park (9th Cir. 1998), 146 F.3d 629, 643.
¶35 Consequently, I would reverse and remand to the District Court with instructions to issue injunctive relief pursuant to § 27-19-201, MCA, and I dissent from our failure to do so.