Justice Beth Baker delivered the Opinion of the Court.
*430 ***511 ¶1 Sharon J. Speck appeals an order of the First Judicial District Court, Lewis and Clark County, affirming the Findings of Fact, Conclusions of Law, Order and Judgment of the Lewis and Clark County Justice Court. The Justice Court's order enjoined Speck from feeding birds within 100 feet of her shared property line in the city of Helena with Hunter Simpkins and Patrick Gustin (collectively "Plaintiffs") and prohibited her from maintaining open water during winter months. We restate the issues Speck raises on appeal as follows:
1. Did the Justice Court abuse its discretion in granting injunctive relief on the ground that Speck's feeding of wild birds constituted a nuisance?
2. Was the Justice Court's injunction overly broad?
We affirm in part and reverse and remand in part.
PROCEDURAL AND FACTUAL BACKGROUND
¶2 Speck, a local member of the Audubon Society, grew up in what she described as a bird-feeding family and has fed birds in her yard for most of her life. Speck now lives in Helena, and her home sits on a 25-by-125-foot lot. In her yard, Speck planted specific varieties of trees and shrubs to promote a bird-friendly habitat. To attract multiple species of wild birds, Speck utilized a variety of feeds and feeding methods, such as different hanging bird feeders and ground feeding. The feeding she provided changed with the seasons: during winter months, she provided additional feed and maintained a heated bird bath to ensure that wild birds would have an unfrozen source of water.
¶3 Plaintiffs moved in next door to Speck about four or five years before the trial in this case. From the time Plaintiffs first moved in, Gustin observed Speck feed birds in her yard on a regular basis. The birds feeding in Speck's yard congregated on a power line running along the property line and landed in the trees in Plaintiffs' yard. Plaintiffs regularly found bird excrement on their property and on vehicles parked in their driveway, endured bird calls from dawn to dusk, and discovered feathers, dismembered birds, and bird carcasses in their yard. Gustin witnessed pigeons, magpies, and crows coming to and from a large patch of ground along their shared property line where Speck spread feed on the ground.
¶4 Gustin confronted Speck twice in January 2017 about her bird feeding. On or around January 11, 2017, Gustin caught Speck while she was on her way to work to complain about bird carcasses and excrement on his property. Their next encounter about the issue ***512 occurred three days later while Speck was spreading bird feed on the ground in her yard. Speck told Gustin that she could not ethically stop feeding the birds at that time because the birds had become habituated to her feedings in winter. After their confrontation, however, Speck attempted to mitigate Gustin's concerns by moving her ground feeding area to the center of her back yard and then to her side yard and by reducing the amount of feed she provided in summer.
¶5 Plaintiffs filed a complaint against Speck in Justice Court on February 9, 2017, alleging trespass, negligence, and nuisance and seeking injunctive relief to prohibit Speck from feeding wild birds within 150 feet of their property. The Justice Court held a bench trial on May 31, 2017. Speck and Gustin testified and provided photographic and video evidence. After the bench trial, the Justice Court determined that Speck had not trespassed onto Plaintiffs' property. It found, however, that Speck was negligent in her bird feeding and caused a nuisance. The court ordered Speck to pay the costs of having Plaintiffs' cars professionally cleaned and enjoined her from feeding birds within 100 feet of Plaintiffs' property and from maintaining open water during winter months. Speck appealed to the District Court, which affirmed the Justice Court's judgment.
*431 STANDARDS OF REVIEW
¶6 We review an appeal from a justice court as if the appeal originally had been filed in this Court. Stanley v. Lemire , 2006 MT 304, ¶ 26, 334 Mont. 489, 148 P.3d 643.
¶7 We review a finding of fact for clear error. Stanley , ¶ 26. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been committed. In re Eldorado Coop Canal Co. , 2016 MT 94, ¶ 17, 383 Mont. 205, 369 P.3d 1034.
¶8 We review the granting of a permanent injunction for a manifest abuse of discretion. Shammel v. Canyon Res. Corp. , 2003 MT 372, ¶ 12, 319 Mont. 132, 82 P.3d 912.
DISCUSSION
¶9 1. Did the Justice Court abuse its discretion in granting injunctive relief on the ground that Speck's feeding of wild birds constituted a nuisance?
¶10 Speck first challenges four of the Justice Court's factual findings as clearly erroneous. Specifically, Speck challenges the Justice Court's findings that she "provided food for several birds, including pigeons, ***513 crows, and magpies, in her back yard for a significant amount of time," that she "has stated ... she will not stop feeding the birds in her customary manner," that her feeding damaged Plaintiffs' soil, and that her feedings caused an "uncommonly large amount of bird droppings" to accumulate on Plaintiffs' property.
¶11 Our review of a Justice Court's factual findings is limited to determining whether the Justice Court committed clear error. Stanley , ¶ 26. Speck testified that she uses hanging bird feeders and spreads bird feed on the ground to attract multiple species of wild birds. She does not strive to feed pigeons, but does like Eurasian collared doves. She testified that the different feeding methods attract different species of birds. Speck testified that on or around January 11, 2017, was the first time Gustin approached her about dead birds, bird parts, and excessive droppings on his property. Gustin filmed their next interaction three days later, and the Justice Court admitted the video into evidence. In the video, Speck tells Gustin that she cannot stop feeding the birds in winter, because it would be unethical to do so. She testified, however, that after Gustin confronted her she adjusted her bird feedings by moving her ground feeding to the center of her backyard and her side yard, rather than along the back of her property line under the caragana bushes and ash tree. She further testified that she substantially decreased the amount of feed she provides in summer.
¶12 Gustin testified that he sees Speck feed the birds a couple of times a day using bird feeders and spreading feed on the ground. He testified that because of Speck's feedings there are bird droppings on his property, driveway, and vehicles, that there is noise from dawn to dusk, and that there are feathers, dead birds, and dismembered birds in his yard. Gustin provided photographs and videos that the Justice Court admitted into evidence showing the number of birds congregating on the power line along the shared property line after Speck fed birds on the ground in her backyard and showing the bird droppings and feathers on his vehicles and property.
¶13 Based on the testimony and evidence presented to the court, we do not find clear error in the Justice Court's findings that Speck fed birds, causing droppings and feathers to accumulate on Plaintiffs' property. Further, in the videotaped interaction between Speck and Gustin, Speck said she would not stop feeding the birds because it would be unethical to do so in winter, supporting the Justice Court's finding that "Speck has stated ... she will not stop feeding the birds in her customary manner." Her testimony, nonetheless, established that she attempted to adjust her feedings to address the issues Gustin ***514 raised with her. Although the Justice Court's finding took Speck's statements out of context, Gustin's testimony and video evidence, including evidence filmed three months after their January confrontations, show that Speck's efforts largely were *432 ineffective at reducing the number of unwanted bird species congregating on and near Plaintiffs' property. We do agree with Speck, however, that substantial evidence did not support the finding that Plaintiffs' soil was damaged.
¶14 Speck argues that the evidence presented to the court did not support its ruling that she acted negligently and created a nuisance. Speck maintains that bird feeding is a lawful activity and that Plaintiffs did not provide evidence that she fed birds negligently. Rather, the evidence showed that she used commercially available bird feeders and feed and engaged in bird feeding practices similar to those employed by other similarly situated persons in the local bird feeding community.
¶15 We review conclusions of law for correctness. Stanley , ¶ 26. Section 27-30-101(1), MCA, defines nuisance as "[a]nything that is injurious to health, indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." When considering what constitutes interference with a property owner's comfortable enjoyment of his or her property, "it is the ordinary and reasonable person's complaint that should serve as a basis for what is a nuisance." Kasala v. Kalispell Pee Wee Baseball League , 151 Mont. 109, 114, 439 P.2d 65, 68 (1968). "A nuisance action may be based upon conduct of a defendant that is either intentional, negligent, reckless, or ultrahazardous." Barnes v. City of Thompson Falls , 1999 MT 77, ¶ 16, 294 Mont. 76, 979 P.2d 1275. An action may "become[ ] a nuisance by virtue of circumstances and surroundings." Barnes , ¶ 17. A nuisance based on negligent conduct "consists of anything lawfully but so negligently or carelessly done or permitted as to create a potential and unreasonable risk of harm, which, in due course, results in injury to another." Barnes , ¶ 18. "A negligence action has four elements: (1) duty; (2) breach of duty; (3) causation; and (4) damages." Henricksen v. State , 2004 MT 20, ¶ 20, 319 Mont. 307, 84 P.3d 38. All persons have a general duty of care "to abstain from injuring the person or property of another or infringing upon any of another person's rights." Section 28-1-201, MCA.
¶16 The Justice Court found that Speck created and maintained a nuisance and that she was negligent in the manner in which she fed birds in her yard. Speck protests that bird feeding is legal and that her ***515 feeding practices are similar to those used by other members of the local bird feeding community. But an action that is otherwise lawful may create a nuisance depending on the circumstances and surroundings. Barnes , ¶ 17. Evidence showed that a power line runs along the parties' property line upon which birds that ground feed in Speck's yard gather. Further, Gustin testified that the trees on his property are much larger than those in Speck's yard and that the birds land in the trees on his property coming to and from Speck's yard. Although the manner in which Speck feeds birds may not be negligent or a nuisance in different surroundings, the evidence supported the Justice Court's conclusion that the manner of feeding was negligent and created a nuisance under these circumstances. The court did not manifestly abuse its discretion in deciding to issue injunctive relief on this basis.
¶17 2. Was the Justice Court's injunction overly broad?
¶18 Finally, Speck argues that the Justice Court's injunction went too far. She argues that the current injunction is not narrowly tailored to Plaintiffs' complaint and unnecessarily and substantially limits Speck's reasonable use of her own backyard. She suggests that prohibiting ground feeding rather than bird feeding of all types would be more equitable.
¶19 "An injunction is an equitable remedy," and it must be "fashioned according to the circumstances of a particular case." Talley v. Flathead Valley Cmty. Coll. , 259 Mont. 479, 491, 857 P.2d 701, 708 (1993) ; see also City of New York v. Mickalis Pawn Shop, LLC , 645 F.3d 114, 144 (2d Cir. 2011) ("Although a district court has a wide range of discretion in framing an injunction in terms it deems reasonable to prevent wrongful conduct, it is nonetheless the essence of equity jurisdiction that a court is only empowered *433 to grant relief no broader than necessary to cure the effects of the harm caused by the violation." (internal quotations omitted)). "The primary objection to broad injunctive orders is the fear that they will impose unnecessary restraints on individual freedom and prohibit lawful and socially desirable activity." 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure , § 2955, 370 (3d ed. 2013); see also 42 Am. Jur. 2d Injunctions § 261 ("An injunction should not ... impose unnecessary burdens on lawful activity."). Thus, because injunctive relief must be "fashioned according to the circumstances of a particular case," an overbroad injunction is an abuse of discretion. See Talley , 259 Mont. at 491, 857 P.2d at 708.
¶20 We have explained that "if a nuisance is private and arises out of the particular manner of the operation of a legitimate enterprise the ***516 court should [do] no more than to point to the nuisance and decree methods of adoption calculated to eliminate the injurious features." Kasala , 151 Mont. at 116, 439 P.2d at 69 ; see also 58 Am. Jur. 2d Nuisances § 299 ("[A trial court] should not enjoin more than that which constitutes the nuisance, should not go beyond the necessities and requirements of the particular case, and should go no further than is absolutely necessary to protect the rights of the parties seeking the injunction." (footnotes omitted)). We have recognized that there is an "overriding policy of individual expression in free and reasonable land use." Higdem v. Whitham , 167 Mont. 201, 208-09, 536 P.2d 1185, 1189 (1975). Thus, while "equity may so decree" the complete abatement of an activity, when it is "possible to [ ] eliminate[ ] the objectionable features which were alleged to have infringed upon the ordinary rights of the respondents" without complete abatement, the court must tailor its injunction to do so. Kasala , 151 Mont. at 116, 439 P.2d at 69.
¶21 The evidence presented before the Justice Court showed that the birds creating the nuisance are those congregating on the power line while feeding on the ground in Speck's backyard, such as pigeons, magpies, and crows. Further, Speck testified that an unfrozen water source during the winter attracts the most birds. Given the evidence presented before the Justice Court, the injunction prohibiting all bird feeding within 100 feet of Plaintiffs' property, including hanging feeders that attract non-nuisance varieties like songbirds, was an overly broad prohibition against Speck's use and enjoyment of her own property and constitutes a manifest abuse of discretion. Based on the evidence in the record, an injunction "calculated to eliminate the injurious features" of Speck's bird feeding would have prohibited Speck from engaging in ground feeding and from providing an unfrozen source of water during winter months. See Kasala , 151 Mont. at 116, 439 P.2d at 69. Prohibiting all feeding was unnecessarily burdensome to Speck's reasonable enjoyment of her property and overly broad. Under the Justice Court's order, Speck could not even hang a hummingbird feeder in her own backyard. We reverse the Justice Court's injunction and remand with instructions to fashion appropriate injunctive relief in light of this Opinion.
CONCLUSION
¶22 The Justice Court did not manifestly abuse its discretion in ordering injunctive relief, but the relief it ordered was overly broad and an abuse of discretion. We affirm the District Court in part and reverse in part. The District Court is directed to enter an order remanding the case to the Justice Court to modify the injunction in accordance with ***517 this Opinion.
We Concur:
MIKE McGRATH, C.J.
INGRID GUSTAFSON, J.
JAMES JEREMIAH SHEA, J.